UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHEN ORRAND,

    Plaintiff,

v.                                                      Case No. 8:23-cv-2338-TPB-SPF

TCF ELECTRIC, LLC,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    This cause comes before the Court on Plaintiff's Motion for Final Default Judgment (Doc. 32). For the reasons set forth herein, it is recommended that the motion be granted in part and denied in part.

**I.    BACKGROUND**

    Plaintiff Stephen Orrand alleges Defendant TCF Electric, LLC unlawfully terminated his employment as a foreman in violation of the Americans with Disabilities Act ("ADA") and the Florida Civil Rights Act ("FCRA") (*See* Doc. 1). Plaintiff's Complaint alleges that he suffers from anxiety, stress, and insomnia, which require him to take certain prescription medications, including Klonopin/benzodiazepine and tetrahydrocannabinoil (THC) (Doc. 1, ¶¶ 16–17). Defendant was aware of Plaintiff's conditions and that Plaintiff's physicians were changing his prescriptions to find the most effective course of treatment (*Id.*, ¶ 20). Despite this awareness, Defendant subjected Plaintiff to a random drug screening (*Id.*, ¶ 21). Plaintiff explained that he had prescriptions for the substances in his drug screening, but Defendant terminated his employment, stating that it was a "liability" for Plaintiff to drive Defendant's

vehicle (*Id.*, ¶ 20). Defendant refused to discuss the possibility of Plaintiff filling a non-driving role within the company (*Id.*, ¶ 24).

On December 28, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations (*Id.*, ¶ 10). Plaintiff mailed Defendant the notice and waited more than 180 days to file his Complaint, which he then filed on October 16, 2023 (*Id.*, ¶¶ 11–13). On February 22, 2024, Defendant's counsel moved to withdraw from her representation, and because Defendant is a corporate entity that cannot represent itself, this Court ordered Defendant to retain new counsel by March 22, 2024 (Docs. 19, 21). After Defendant failed to retain counsel, the Court directed the Clerk to strike Defendant's responsive pleading and enter a Clerk's default against Defendant (Docs. 27, 29). Plaintiff now seeks a final default judgment against Defendant (Doc. 32).

## II.    STANDARD OF REVIEW

Rule 55(a) of the Federal Rules of Civil Procedure states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Once this has occurred, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). A court may enter a default judgment against a party who has failed to respond to a complaint if the complaint provides a sufficient basis for the judgment. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact" set forth in the operative complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quotation

2

omitted). As such, if well-pleaded, liability is established by virtue of a default. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

Damages, however, are not admitted by virtue of default. *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). "Rather, the Court determines the amount and character of damages to be awarded." *Id*. If, in order to enter or effectuate judgment, it is necessary to conduct an accounting to determine the amount of damages, the court may conduct hearings or make referrals as it deems necessary and proper. Fed. R. Civ. P. 55(b)(2). Damages may be awarded "without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation," as long as "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232, 1233 n.13 (11th Cir. 2005) (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (a hearing is not necessary if sufficient evidence is submitted to support the request for damages).

### III.    DISCUSSION

Plaintiff's Complaint brings one claim for violation of the ADA and one claim for violation of the FCRA. As a result of these violations, Plaintiff seeks $35,360.00 in lost wages, or back pay, and $524.14 in court costs. The allegations in the Complaint, which the Court accepts as true, establish that Defendant is liable, and Plaintiff is entitled to a declaratory judgment in his favor.

### a. Liability Under Counts I and II

Because "Florida courts have recognized . . . that actions under FCRA are analyzed under the same framework as the ADA," both claims alleging disability discrimination will be addressed under an ADA framework. *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1221 (11th Cir. 2000) (citing *Fromm-Vane v. Lawnwood Med. Ctr., Inc.*, 995 F. Supp. 1471, 1475 n.4 (S.D. Fla. 1997)); *see also St. Johns Cty. Sch. Dist. v. O'Brien*, 973 So. 2d 535, 540 (Fla. 5th DCA 2007) ("The FCRA is construed in conformity with the federal ADA and related regulations."); *Green v. Seminole Elec. Co-op., Inc.*, 701 So. 2d 646, 647 (Fla. 5th DCA 1997). The ADA prohibits employers from discriminating against disabled employees. 42 U.S.C. § 12112(a). For a discrimination claim under the ADA, the plaintiff must "allege sufficient facts to plausibly suggest that 1) he suffers from a disability; 2) he is a qualified individual; and 3) a covered entity discriminated against him on account of his disability." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (citing *Cramer v. Florida*, 117 F.3d 1258, 1264 (11th Cir. 1997)) (internal quotations omitted); *see also Moreira v. Am. Airlines, Inc.*, 157 F. Supp. 3d 1208, 1214 (S.D. Fla. 2016) ("To establish a *prima facie* case of disability discrimination under the FCRA, [the plaintiff] must demonstrate he was (1) disabled; (2) qualified to perform his job; and (3) subject to unlawful discrimination because of his disability."). Plaintiff's Complaint satisfies each of these elements.

With respect to the first element, the ADA defines "disability" to include "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff's Complaint states that he suffers from anxiety,

stress, and insomnia and is prescribed medication for his diagnoses (Doc. 1, ¶¶ 16, 20). Plaintiff also states that the Defendant was aware of these conditions and Plaintiff's ongoing pharmacological treatment (*Id.*, ¶¶ 20–24, 35). *See Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996) ("[A] plaintiff must demonstrate that the employer had either actual or constructive knowledge of the disability or considered the employee to be disabled."). As a result, the Court finds that Plaintiff has established that he suffers from a disability.

Regarding the second element, the ADA defines a "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions" of his employment. 42 U.S.C. § 12111(8). Plaintiff alleges that he is a "qualified individual" because his prescribed medications never affected his work as a foreman (*Id.*, ¶¶ 15, 18). In fact, Plaintiff claims that his treatment made him more effective at his job (*Id.*, ¶ 19). Nevertheless, even assuming Plaintiff could not perform driving tasks at work, Plaintiff alleges that Defendant "refused to even discuss" the possibility of Plaintiff filling a non-driving role within the company (*Id.*, ¶ 24). Thus, Plaintiff has established that he is a qualified individual.

Finally, to establish the third element, Plaintiff must show that a covered entity discriminated against him on account of his disability. *Surtain*, 789 F.3d at 1246. An employer is considered a covered entity, and discrimination includes discharging an employee based on his disability. 42 U.S.C. §§ 12111(2), 12112(a). Plaintiff's Complaint clearly establishes that Defendant was his employer (Doc. 1, ¶¶ 5–6, 15). In addition, by showing that Defendant terminated his employment as a result of the prescription medication he takes for his disability, Plaintiff has established that Defendant terminated his employment on

5

account of his disability (*Id.*, ¶¶ 22–27). As a result, Plaintiff has established that Defendant is liable for violating the ADA and the FCRA.

### b. Damages

Plaintiff submits his declaration in support of his request for back pay damages in the amount of $35,360.00 (Doc. 32-1). While Plaintiff's calculations contain errors, as discussed more fully below, Plaintiff's sworn testimony as to the hours worked and rates earned is sufficient evidence to calculate his damages. *Cf. Wallace v. The Kiwi Grp.*, 247 F.R.D. 679, 682 (M.D. Fla. 2008) (finding plaintiffs' affidavits sufficient evidence for calculating FLSA damages). As a result, no hearing is necessary on the issue of Plaintiff's entitlement to damages.

Once discrimination is proved under the ADA, a plaintiff is "presumptively entitled to back pay." *Nord v. U.S. Steel Corp.,* 758 F.2d 1462, 1472 (11th Cir. 1985). 42 U.S.C. § 2000e-5 authorizes "recovery of back pay for up to two years preceding the filing of the charge[.]" 42 U.S.C. § 2000e-5(e)(3)(B); *see also* 42 U.S.C. § 12117(a) (adopting § 2000e-5's enforcement mechanisms as those for the ADA). "[A]n award of back pay is intended to make the claimant whole, not to confer a windfall." *E.E.O.C. v. Joe's Stone Crab, Inc.*, 15 F. Supp. 2d 1364, 1378 (S.D. Fla. 1998). To calculate a back pay award, "the trial court must determine what the employee would have earned had she not been the victim of discrimination, and must subtract from this figure the amount of actual interim earnings." *Id.* Back pay is generally calculated from the date of the adverse employment action until the date of judgment. *Id.* at 1377; *see also Sublett v. Landshark Grp., Inc.*, No. 1:20-cv-128-AW-GRJ, 2021 WL 5055074, at *10 (N.D. Fla. Aug. 26, 2021) ("Back pay is calculated by taking

6

the employee's rate of pay at discharge and applying it to the amount of time she was unable to secure other, or adequate employment, without taking into account any taxes, unemployment benefits or social security benefits."), *report and recommendation adopted*, 2021 WL 5052729 (Nov. 1, 2021).

As an equitable remedy, back pay is subject to a good-faith effort to mitigate damages. *Richardson v. Tricom Pictures & Prods., Inc.*, 334 F. Supp. 2d 1303, 1310 (S.D. Fla. 2004), *aff'd*, 183 F. App'x 872 (11th Cir. 2006). Thus, a plaintiff must mitigate damages "by seeking employment 'substantially equivalent' to the position she was denied." *Joe's Stone Crab*, 15 F. Supp. 2d at 1378 (quoting *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir. 1991)). Finally, the court will "resolve uncertainties in back pay in favor of the discrimination victim." *Lathem v. Dep't of Child. & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999) (citing *Pettway v. Am. Cast Iron Pipe Co.*, 494 F.2d 211, 260–61 (5th Cir. 1974)).

From July 29, 2020 until June 23, 2021, Plaintiff worked for Defendant and earned $1,000.00 per week at an hourly rate of $25.00 (Doc. 32-1, ¶¶ 4–5).[1] After his termination, Plaintiff was unemployed for ten weeks until obtaining employment on September 1, 2021 (*Id.*, ¶ 8). At this job, he earned $800.00 per week at an hourly rate of $20.00 (*Id.*). Plaintiff remained with this employer until March 1, 2022, when he began a new job paying a higher wage of $22.00 per hour or $880.00 per week (*Id.*). Plaintiff is still employed at this company (*Id.*). While Plaintiff's declaration purports to support a request for back pay in the amount

---

[1] During all relevant time periods, Plaintiff worked forty hours per week (Doc. 32-1, ¶ 8).

of $35,360.00, this figure is incorrect due to a scrivener's error.[2]  Recovery of back pay begins on the date of Plaintiff's unlawful termination, and the accrual terminates on the date judgment is rendered.  *Joe's Stone Crab*, 15 F. Supp. 2d at 1377 (citing *Nord,* 758 F.2d at 1473).  Thus, Plaintiff's damages may be calculated as follows:

| Date Range | Time | Weekly Pay Rate | Amount Earned (Time x Weekly Pay Rate) | Amount Plaintiff would have earned with Defendant | Amount Owed |
|---|---|---|---|---|---|
| June 23, 2021 – September 1, 2021 | 10 Weeks | $0 | $0 | 10 weeks x $1,000.00 = $10,000.00 | **$10,000.00** |
| September 1, 2021 – March 1, 2022 | 26 Weeks | $800.00 | $20,800.00 | 26 weeks x $1,000.00 = $26,000.00 | $26,000.00 - $20,800.00 = **$5,200.00** |
| March 1, 2022 – July 23, 2024[3] | 125 Weeks | $880.00 | $110,000.00 | 125 weeks x $1,000.00 = $125,000.00 | $125,000.00 - $110,000.00 = **$15,000.00** |
| TOTAL: | | | | | **$30,200.00** |

As a result, Plaintiff is entitled to back pay in the amount of $30,200.00.  This figure accounts for Plaintiff's post-termination unemployment, Plaintiff's prior employment during which he earned $800.00 per week, and Plaintiff's current employment where he earns $880.00 per week.  By failing to file a responsive pleading or otherwise challenge the

---

[2] Plaintiff calculated part of his back pay as if he had started working at his current job on March 1, 2021 instead of March 1, 2022 (Doc. 32, ¶ 7; Doc. 32-1, ¶ 8).  Because Plaintiff was terminated by Defendant on June 23, 2021 and Plaintiff otherwise represents that he started working at his current job on March 1, 2022, the Court concludes this was a scrivener's error.  (*See* Doc. 32-1, ¶ 8 ("Beginning on March 1, 2022, I began working for another company earning $22 per hour for 40 hours per week.").

[3] This date, and thus, the amounts in this row, are subject to change, depending on the date of judgment.

allegations, Defendant has failed to meet its burden of proving Plaintiff did not mitigate his damages or otherwise is not entitled to back pay.

In addition, Plaintiff requests costs in the amount of $524.14 (Doc. 32, ¶ 8; Doc. 32-1, ¶ 7). These costs include $402.00 for the court filing fee, $113.00 for service of process, $6.14 for postage, and $3.00 in facsimile charges (Doc. 32-1, ¶ 7). While a prevailing party is entitled to recover costs under 42 U.S.C. § 2000e-5(k), postage and facsimile costs are not properly recoverable. *See* 28 U.S.C. § 1920; *see also Piper v. Metro Sols., LLC*, No. 8:18-cv-3038-TPB-JSS, 2021 WL 1341460, at *10 (M.D. Fla. Feb. 16, 2021), *report and recommendation adopted*, 2021 WL 1050140 (Mar. 19, 2021). As a result, Plaintiff may recover $515.00 in costs.

Accordingly, it is hereby

**RECOMMENDED:**

1. Plaintiff's Motion for Final Default Judgment (Doc. 32) be granted in part and denied in part as set forth herein.

2. The Court direct the Clerk to enter a final default judgment in favor of the Plaintiff and against Defendant.

3. Plaintiff be awarded the following amounts against Defendant:

    a. Back pay in the amount of $30,200.00, and

    b. Costs incurred in this action in the amount of $515.00.

**IT IS SO REPORTED** in Tampa, Florida, on July 9, 2024.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.